IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JIMYE TAYLOR, #157736      )
      )
     Plaintiff,      )
      )
   v.      )    CASE NO. 2:10-CV-383-TMH
      )       [WO]
      )
KENNETH JONES, and      )
STEVE WALKER,      )
      )
     Defendants.      )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Jimye Taylor ["Taylor"], an indigent state inmate currently incarcerated at the Bullock Correctional Facility ["Bullock"].  Taylor alleges that the defendants failed to provide seating for him on the Native American ceremonial grounds in violation of his rights under the Religious Land Use and Institutionalized Persons Act ["RLUIPA"], the Americans with Disabilities Act ["ADA"], his due process, equal protection and Eighth Amendment rights.  *Complaint - Doc. No. 1 at 2-4.*  Taylor also contends that the defendants conspired to violate his federal rights. *Id.*  Taylor names as defendants Kenneth Jones, the Warden at Bullock, and Steve Walker, the Chaplain at Bullock.[1]  Taylor seeks injunctive relief and monetary damages for the

---

[1] Taylor originally named Richard Allen as a defendant.  Allen was dismissed as a defendant at Taylor's request.  *Order of May 31, 2012 - Doc. 49.*

alleged violations.  *Id*. at 4.

The defendants filed a special report, supplemental special reports, and supporting evidentiary materials addressing Taylor's claims for relief.  The court informed Taylor that the defendants' special report may, at any time, be treated as a motion for summary judgment and explained to Taylor the proper manner in which to respond to a motion for summary judgment.  *Order of July 12, 2010 - Doc. No. 18*.  Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' report and supplemental reports as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Taylor is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for

summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material

under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court, which is admissible on its face or which can be reduced to admissible form, indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine

6

dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Taylor fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Summary of Material Facts

The following facts are taken in the light most favorable to the plaintiff, the non-moving party.  Taylor was an inmate at Bullock in 2007, and he is a practicing member of the Native American religious group.  Taylor has a history of chronic medical problems, and he has had a "no prolonged standing" medical directive since 1993.  *Defs.' Ex. D - Doc. No. 17-2; Taylor Aug. 10, 2010, Aff. – Doc. No. 23-1* at 3, 6.

Defendant Steve Walker has been Chaplain at Bullock for all times relevant to Taylor's complaint.  In approximately November 2007, defendant Kenneth Jones became Warden at Bullock.  Before Jones arrived, the Native American grounds had seating on the sacred grounds, including tin cans with boards on top of them, a bench, four locker boxes and a five-gallon bucket.  *Taylor Dec. 18, 2012, Aff. – Doc. No. 73-1* at 2.  After he arrived at Bullock, Jones ordered that all seating be removed.  According to Taylor, Jones and Walker believed Native Americans did not use off-the-ground seating during their ceremonies.  *Taylor Aug. 10, 2010, Aff. – Doc. No.* 23-1 at 2-3.  At the time of Taylor's original complaint,

7

Taylor stated the grounds included seating for nine of the approximate forty inmates who used the grounds, *Compl. – Doc. No. 1* at 3, and that a request slip was submitted to the defendants identifying six handicapped members who needed access to seating. *Taylor Aug. 10, 2010, Aff. – Doc. No.* 23-1 at 3.

On February 21, 2008, inmate James Edward Wallace[3] submitted a Request for Religious Assistance, also known as a 313 Application,[4] asking for seating off the ground on the Native American grounds to "comply with history, culture," and with a source showing "our people used seats according to rank, these seats according to culture and history would pull our people together to sit around the fire pit, and follow the Cherokee culture and history." *Defs.' Ex. E – Doc. 21-1* at 1, 4-5.  On February 27, 2008, Walker sent the application to Jones for evaluation, and Jones eventually approved it over two years later, on March 3, 2010. *Id.* at 2-3.

In the meantime, Walker put the request on the agenda of the Religious Activities

---

[3] Taylor's request was considered with that of Wallace's and other handicapped inmates seeking similar seating.  Wallace filed a nearly identical federal lawsuit regarding seating in *Wallace v. Jones*, No. 2:10-cv-361-MEF (M.D. Ala.).

[4] Administrative Regulation 313 provides that an inmate "may submit a written request to the Chaplain or Warden (where no Chaplain is available) for assistance.  It should be the Chaplain's responsibility to investigate the inmate's request for religious assistance and determine an appropriate course of action, in conjunction with the Warden or Director if it impacts or has the capacity to impact on security.  The Religious Activities Review Committee has final approval on such matters." *Doc. No. 8-2* at 2; *Doc. No. 8-3* at 1; *Doc. Nos. 8-4, 8-5, 8-6*.  The regulation does not provide specific deadlines for processing applications.

Review Committee ["RARC"],[5] which asked Walker to research the request. *Walker May 13, 2010, Aff. –Doc. No. 8-1* at 2. On February 4, 2009, Walker sent a memo to the Executive Director of Alabama Indian Affairs, asking what type of seating Native Americans used and "Is there any type of seat or seating material that is a religious requirement?" *Defs.' Ex. F – Doc. No. 21-2* at 1. On March 24, 2009, the Native American consultant responded that "it would certainly be possible to have seating," and she recommended to make the seating natural, "such as tree stumps, boulders, or benches made from wood." *Id.* at 2.

On June 30, 2009, Walker asked Wallace for the names of the inmates and their disabilities "in order to facilitate the religious need." *Defs.' Ex. G – Doc. No. 21-3* at 2. Wallace responded on July 1, 2009, with the names of several inmates, including Taylor, "who may need special wood seats, so they may move around and use in the Medicine Wheel area, to assist them in saying their prayers." *Id.* at 2.

At some point in early 2010, Wallace supplemented his Request for Religious Assistance with supporting medical records. *Walker May 13, 2010, Aff. – Doc. No.* 8-1 at 2. On March 3, 2010, Jones approved Wallace's request. *Defs.' Ex. E – Doc. No. 21-1* at 3. Taylor then submitted the instant suit, which was postmarked May 3, 2010. *Compl. – Doc. 1* at 6.

On May 7, 2010, the Alabama Department of Corrections ["ADOC"] Associate

---

[5] The RARC is comprised of the Deputy Commissioner of Programs, the Chaplaincy Program Coordinator, and four senior regional Chaplains. *Admin. Reg. 333, Doc. No. 8-4* at 1.

Commissioner informed Walker he would approve Wallace's request.  *Walker Aff. – Doc. No. 8-1* at 2.  On May 13, 2010, the RARC approved the use of "seats made of natural substance" for Native American grounds which "will accommodate security concerns such as, secure bench type seating."  *Defs.' Ex. B – Doc. 13-1.*  On June 30, 2010, the Associate Commissioner approved wooden benches with wooden posts "anchored in concrete."  *Defs.' Ex. C – Doc. 17-1* at 1.  In October 2010, two benches were placed on the Native American grounds, in addition to the four locker boxes and one five-gallon bucket that had remained in place on the grounds.  *Defs.' Ex. I – Doc. 38-2* (photo of the grounds).

On July 26, 2011, Walker executed an affidavit stating that the delay in resolving the request was caused by budgetary constraints, and he explained the process used to address the request:

> There was some delay in reviewing the request for seating, which was caused by the fact that the Religious Activities Review Committee was not able to meet more often than an average of once per month due to budget constraints.  The members of The Religious Activities Review Committee all have other responsibilities in a correction system that is constantly short on funds and manpower.  Also, the business agenda of the Religious Activities Review Committee is constantly kept very full of religious requests that range from very simple to very complex.  This Committee handles Religious Practice and Parameter issues that are necessary to determine what may become official policies or regulations of the ADOC.
>
> Before the Religious Activities Review Committee received the request for seating which is at issue in this case, Warden Kenneth Jones and myself were faced with having to remove the previously existing seating on the Native American Grounds at Bullock Correctional Facility.  At that time, different ADOC facilities were independently establishing different seating arrangements for their own Native American Grounds.  There was a concern within the ADOC leadership that everyone might not be on the same page in

10

principle and practice.  Consequently, ADOC facilities were directed to remove the old seating until a new seating policy could be established by the Religious Activities Review Committee.

After a decision was made by the Religious Activities Review Committee, the ADOC Associate Commissioner of Programs issued a memorandum authorizing the construction of new wooden benches on Native American Sacred Grounds at ADOC's various facilities.  Pursuant to this directive, we placed two new benches on the Native American Sacred Grounds at Bullock Correctional Facility.  These benches are sufficient to accommodate the seating needs of the Plaintiff and others who may require special seating for Native American worship.  Since these benches were erected, neither the Plaintiff nor other Native American inmates at Bullock Correctional Facility have presented any further complaints concerning the provision of seating on the Native American Sacred Grounds there.  The attached photographs [*Ex. I –Doc. 38-2*] depict the Native American Sacred Grounds as they now exist at Bullock Correctional Facility.  In addition to the two newly constructed wooden benches, these photos also show four locker boxes that are currently on the Native American Sacred Grounds and are necessary for the storing of approved religious practice paraphernalia.

*Walker July 26, 2011, Aff. – Doc. 38-1* at 1-2.  Walker submitted a supplemental affidavit dated November 20, 2012, stating he "never required inmates Jimye Taylor or James Wallace, or any other inmate, to either sit or to stand on the Native American Sacred Grounds during the times that Native American inmates were doing various rituals or ceremonies."

*Walker Nov. 20, 2012, Aff. – Doc. 70-1* at 1-2.  Walker further avers:

Since the time of the establishment of the Sacred Grounds at Bullock Correctional Facility, inmates have had the ability to sit on the ground, or to sit on five-gallon plastic buckets and the four locker boxes that have been on the Sacred grounds.

When the Religious Activities Committee approved benches for the Sacred Grounds, orders were given to eliminate all other types of alternative seating except sitting on the ground or the approved locker boxes.  This was done to make sure that the standard principles concerning Sacred Grounds would be in line with the Administrative Regulations in all of the institutions

of the Alabama Department of Corrections.

> At no time did inmate Jimye Taylor or James Wallace inform me that they were going through great pain because there was not any ability to have anything to sit on in the Native American Sacred Grounds. During the process of submitting the paperwork for the approval of the seating on the Sacred Grounds, these inmates informed me that they had disability issues that probably would necessitate the seating to meet standards for those inmates who had disabilities.
>
> Warden Kenneth Jones and I, Dr. Stephen O. Walker, Chaplain, did everything in our ability to facilitate the approval process for the seating on the Native American Sacred Grounds.

*Id.* at 2.  Jones similarly stated in his affidavit:

> I have been the Warden of Bullock Correctional Facility for approximately five (5) years.  There have been locker boxes on the Native American Grounds used by the Native American Inmates for storage and seating since before I was assigned to Bullock.  Inmates have never been required to stand or sit while utilizing the Native American Grounds.  It has always been an option to either sit or stand. . . . Wallace . . . never complained to me about enduring any pain as a result of not being able to sit on the Native American Grounds.  In fact, I have not received such a complaint from any Native American inmate.

*Jones Nov. 20, 2012, Aff. – Doc. No. 70-2* at 1-2.

Taylor asserts that his only options were to sit on the ground or stand during the religious ceremonies. *Taylor Dec. 18, 2012, Aff.– Doc. No. 73-1* at 4.  Taylor, however, also admitted that before the new benches were installed that there were four metal boxes on which eight members could sit, as well as a five-gallon bucket on which one other inmate could sit. *Compl. – Doc. No. 1* at 3.  Thus, Taylor concedes that inmates were at all times allowed to sit on the ground and that off-the-ground seating was available for nine inmates. *Id.*

12

Taylor states he and Wallace informed the defendants that they were preparing a civil suit in early 2010. *Taylor Dec. 18, 2012, Aff. – Doc. No. 73-1* at 3. Taylor submitted an affidavit from Wallace wherein Wallace states that he was told by a chapel liaison, an individual not named as a defendant in this civil action, that if anyone "files a lawsuit Walker would shut the [Native American] religious grounds down [and had] heard these[] very words out of Chaplain Walker [own] mouth." *Wallace May 20, 2010, Aff. – Doc. No. 12* at 20.[6] Contrary to this assertion, however, the Native American ceremonial grounds were not shut down during the pendency of the inmates' civil actions.

According to Taylor, Walker repeatedly said one person had not signed off on the February 21, 2008, 313 Application. *Taylor Dec. 18, 2012, Aff. – Doc. No. 73-1* at 2. Taylor believes it was Jones who held onto the application for over two years before going to the RARC. Taylor submitted affidavits from other inmates, all attesting to various aspects of Taylor's version of the events. *Lewis Aff. – Doc. No. 12* at 11; *Tooley Aff. – Doc. No. 12* at 13; *Westbrook Aff. – Doc. No. 12* at 15; *Wallace Aff. – Doc. No. 12* at 17; *Trantham Aff. – Doc. No. 82-1*; *Kirby Aff. – Doc. No. 82-2*; *Robinson Aff. – Doc. No. 84-1*.

## B. Injunctive/Declaratory Relief

Defendants argue that because the seating Taylor requested was approved, and that benches were installed on the Native American grounds, Taylor's requests for equitable relief

---

[6] Taylor did not bring a retaliation claim, and the court does not construe Taylor's pleadings to state one.

13

are moot.  *Defs.' Supp. Report – Doc. No. 38* at 3.  Taylor initially objected to the form of the

bench in August 2010, before the benches were installed.  *Pl.'s Response – Doc. No. 23* at

6. He has not, however, continued to object to the form of the seating since the installation.

Under the circumstances, the court deems moot Taylor's request for equitable relief.  *See*

*Adler  v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).

 "Equitable relief is a prospective remedy, intended to prevent future injuries." *Id.*  For

that reason, "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable

relief become moot because the plaintiff no longer needs protection from future injury." *Id.*;

*see also Spears v. Thigpen,* 846 F.2d 1327, 1328 (11th Cir. 1989) (per curiam) ("[A]n

inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case

or controversy once the inmate has been transferred.") (quotation marks and citation

omitted).  "Past exposure to illegal conduct does not in itself show a pending case or

controversy regarding injunctive relief if unaccompanied by any continuing, present injury

or real and immediate threat of repeated injury." *Cotterall v. Paul,* 755 F.2d 777, 780 (11th

Cir. 1985) (quotation marks and citations omitted).  Absent in this case is any showing of a

"continuing, present injury or real and immediate threat of repeated injury" to Taylor.  *See*

*id.* (finding that a transfer of the plaintiff back to the jail if he was again incarcerated at a

minimum security facility and charged with a disciplinary infraction was too speculative to

satisfy the required injury element).  Mootness is jurisdictional, and dismissal of the equitable

claims is required when an action is moot, as a decision in a moot action would be an

impermissible advisory opinion. *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001) *(*per curiam*).* Consequently, Taylor's equitable claims are due to be dismissed.

### C.  RLUIPA Claim

Taylor cannot recover monetary damages from defendants in their individual capacity under RLUIPA because RLUIPA does not create "a private action against individual defendants for monetary damages." *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, --- U.S. —, 131 S. Ct. 1651, 1657 n.3 (2011).  Taylor's RLUIPA claim for money damages from defendants in their official capacity is likewise precluded.  In *Sossamon*, the Supreme Court abrogated *Smith*'s denial of sovereign immunity to the State of Texas and held, in pertinent part, "that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA. . . ." 131 S. Ct. at 1663.  Thus, with respect to Taylor's RLUIPA claim, there is no cause of action against the defendants for monetary damages in their individual capacities, and sovereign immunity protects them from monetary damages sought against them in their official capacities.  The defendants' request for summary judgment on Taylor's claim for monetary damages under RLUIPA is, therefore, due to be granted.

### D.  Section 1983 Claims

Taylor claims that the defendants, in both their individual and official capacities, violated his rights to due process, equal protection, freedom from cruel and unusual

punishment and conspired to violate his federal rights.  The defendants argue that Taylor failed to exhaust his administrative remedies[7] before filing suit, they are entitled to immunity on some of his claims, and they deny violating any of Taylor's rights.

### 1. Absolute Immunity to the Constitutional Claims[8]

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59] (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them under § 1983 in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).  In light of the foregoing and under the facts of this

---

[7] *See* 42 U.S.C. § 1997e(a) (requiring exhaustion of available administrative remedies before filing suit).  Plaintiff insists that he exhausted his administrative remedies because his request was consolidated with Wallace's and they waited two years for defendants to process his religious request.  Even assuming, however, that Taylor satisfied the requirements of § 1997e(a), defendants are due to be granted summary judgment for the reasons stated in this Recommendation.

[8] As will be discussed *infra*, "Title II of the ADA creates a private cause of action for damages against the States for conduct that ***actually*** violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original).

case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities for alleged violations of the Constitution. *Id.* at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### 2. Qualified Immunity

As for Taylor's constitutional claims against the defendants in their individual capacities, the defendants assert that they are entitled to qualified immunity. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (same). Qualified immunity is not merely a defense against liability but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citation omitted). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that defendants were acting within the course and scope of their discretionary authority when the incidents complained of occurred. Taylor must, therefore, allege facts that, when read in a light most favorable to him, show that Jones and Walker are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

17

In order to satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). A right may be "clearly established" in several ways. The relevant statute or constitutional provision may be "so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Vinyard*, 311 F.3d at 1350. If the conduct does not violate the rule on its face, the court considers legal precedent at the time the defendant acted. *Id.* at 1351. The Supreme Court has instructed that this inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

> "In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, [the] precedent [of the Eleventh Circuit Court of Appeals], and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances." [*Oliver v. Fiorino*], 586 F.3d [898,] 907 [(11th Cir. 2009)]. If there is no precedent on point, a right is clearly established only if the law has "earlier been developed in such [a] concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Crawford v. Carroll,* 529 F.3d 961, 977-78 (11th Cir. 2008) (quotation marks omitted).

*Muhammad v. Sapp*, 388 F. App'x 892, 898 (11th Cir. 2010); *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir.1997) (en banc) (When determining "clearly established" law, this court looks only to "decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.").

18

"Thus, the qualified immunity standard is broad enough to cover some mistaken judgment, and it shields from liability all but the plainly incompetent or those who knowingly violated the law." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) (citations and quotation marks omitted). Courts now have discretion to determine the order in which the two prongs of a plaintiff's burden of proof are analyzed. *Pearson*, 555 U.S. at 236 (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case hand."). The court, therefore, analyzes whether defendants violated Taylor's constitutional rights.

### a. Due Process

Taylor claims that the delay in processing his request for seating on the Native American grounds violated his right to due process. The religious request procedure itself, like the prison grievance procedure, is not constitutionally mandated and does not create an entitlement for Taylor. *Cf. Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005) (per curiam) (unpublished) (following other circuits that held prison administrative remedies "'do not in and of themselves create a liberty interest in access to that procedure,' and that 'the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance'" (quoting *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam)). Taylor also does not argue, and it does not appear from the record, that the delay in obtaining seating was the sort of

19

deprivation that "impose[d] atypical and significant hardship on [Taylor] in relation to the ordinary incidents of prison life." *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (describing contours of rights under the Due Process Clause).  Consequently, Taylor fails to create a genuine issue of material fact that his due process rights were violated.  The defendants are therefore entitled to qualified immunity, *see Hope*, 536 U.S. at 739 (officer's conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known"), and summary judgment is due to be granted in favor of the defendants on Taylor's due process claim.

### b. Equal Protection

Taylor alleges that the actions of the defendants constituted discrimination against him because the prison cannot treat members of one religious affiliation differently just because they are fewer in number than other religious groups.  This claim, however, provides no basis for relief to Taylor.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed. . . . The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-12 (1974); *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  In order to present a claim

of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292 (1987).

 Since this case is before the court on a properly supported motion for summary judgment from the defendants, Taylor bears the burden of producing evidence which would

be admissible at trial sufficient to show that the action of the defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-24; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment). Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants. *Anderson*, 477 U.S. at 249.

First, Taylor does not show he is similarly situated to other religious groups or handicapped inmates. Taylor admits that other religious groups differ in size from the Native Americans, and the record is silent as to their seating requirements, religious practices or the number of handicapped inmates in those groups. Second, assuming for the sake of argument that Taylor meets the similarly situated element, Taylor's equal protection claim nevertheless fails because no reasonable juror could find, based on this record, that defendants acted with an improper motive. *See McKleskey*, 481 U.S. at 292.

The defendants adamantly deny they undertook any adverse action against Taylor in violation of his equal protection rights. Other than Jones' alleged statement that Native Americans sit on the ground and the delay itself, the record is devoid of any evidence that the defendants acted in an intentionally discriminatory manner. Instead, the evidence before

the court indicates that the delay in the defendants' approval of benches occurred because of budgetary constraints, a busy agenda for the RARC, and the complex nature of coordinating a consistent policy for Native Americans throughout the ADOC.  The defendants never forced Taylor to sit or stand during ceremonies, and Taylor was able to sit on either the ground or a locker box if he chose to do so.  The defendants were unaware of the extent of the pain Taylor suffered as a result of not being able to sit on a raised seat on the Native American grounds.  The allegations presented by Taylor do not warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation.  *Sweet*, 467 F.3d at 1319;  *E & T Realty v. Strickland*, 830 F.2d 1107, 1114-15 (11th Cir. 1987); *Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994).  Furthermore, the arbitrary application of administrative rules does not constitute a violation of the Constitution.  *E & T Realty*, 830 F.2d at 1114.  Taylor has not created a genuine issue that religion or some other constitutionally impermissible factor constituted a motivating factor in the defendants' actions.  Thus, the defendants are entitled to qualified immunity, and summary judgment is due to be granted in favor of the defendants on Taylor's equal protection claim.[9]

---

[9] Taylor claimed a right to equal protection under the Alabama Constitution.  Relying on *Ex Parte Melof*, 735 So.2d 1172 (Ala. 1999), defendants assert that the Alabama Constitution contains no separate equal protection guarantee.  The disposal of Alabama-based equal protection claims has been questioned.  *See Dyas v. City of Fairhope*, No. 08-0232-WS-N, 2010 WL 5477754, at *2-3 (S.D. Ala. Dec. 30, 2010).  Nevertheless, if a state equal protection claim exists, it would be analyzed under the same standard as a federal equal protection claim.  *See id.*  Because Taylor's federal equal protection claim fails, so does his state claim.

### c. Deliberate Indifference

Taylor argues that the defendants violated his Eighth Amendment rights through deliberate indifference to his medical needs when they delayed installation of seating on the Native American grounds. Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "'Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Rhodes*, 452 U.S. at 347). A prison official may likewise be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (mere incidents of negligence or malpractice do not rise to the level of constitutional violations). The inmate must establish the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not 'respond[] reasonably to the risk.' . . ." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) (quoting *Farmer*, 511 U.S. at 844 ). However, not all pain suffered by an inmate "translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "A plaintiff must also show that the constitutional violation caused his

injuries." *Marsh*, 268 F.3d at 1028.  Thus, in order to survive summary judgment on this claim, Taylor is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-29.  "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations marks and citation omitted); *see also Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (relying on *Mann).*  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*."  *Farmer*, 511 U.S. at 837-38 (emphasis added); *Campbell v. Sikes*, 169 F.3d

1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

In addition to the above-described requisite elements, when an inmate alleges deliberate indifference based on a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).  In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *overruled in part on other grounds, Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *Mann*, 588 F.3d at 1307.

Initially, the court notes that Taylor presents no verifiable medical evidence which indicates that he suffered a detrimental effect as a result of defendants' delay in providing seating on the Native American grounds.  The record includes some of Taylor's medical

26

records and a medical form for no prolonged standing, but these documents are simply descriptions of his care and directives, and they show no causal link between defendants' acts and Taylor's claimed injuries in this case. *Doc. No. 17-2; Doc. No. 23-1* at 6. In addition, the affidavits filed by defendant Walker address Taylor's allegations and the reasons for the delay. *Walker July 26, 2011, Aff. – Doc. No. 38-1; Walker May 13, 2010, Aff. – Doc. No. 8-1.* Neither Walker nor Jones knew that Taylor's medical situation required swift action or that he was in significant pain while attending religious ceremonies on Native American grounds at Bullock. *Jones Aff. – Doc. No. 70-2* at 1-2*; Walker Nov. 20, 2012, Aff.– Doc. No. 70-1* at 2*.* Taylor has not presented evidence that defendants, both lay persons, must have known his medical need for seating at the grounds was obvious or so serious it required faster processing of his request for seating. To the contrary, defendants state that they do not mean to diminish Taylor's pain, but they did not know Taylor was in great pain from not having a wooden bench on which to sit, that Taylor always had the option to sit on the locker boxes on the Native American sacred grounds, and that Taylor did not file a complaint about being in pain. *See Mann*, 588 F.3d at 1308 ("mere negligence or a mistake in judgment does not rise to the level of deliberate indifference"). The process to install seating for handicapped inmates on the Native American sacred grounds was no doubt lengthy. The record demonstrates, however, that the delays were not the result of any indifference to the potential harm to Taylor but rather because of the limited resources available to respond to the many religious requests before the RARC and to coordinate consistent policies throughout the

27

ADOC.  The defendants deny knowledge of any condition from which an inference could be drawn that a substantial risk of serious harm existed to Taylor while he worshiped on the Native American grounds, and there is no evidence before the court which suggests otherwise.  The record is also devoid of evidence showing that either of the defendants drew the requisite inference.  *See Carter*, 352 F.3d at 1350 ("Plaintiff has failed to establish that either Defendant had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established. . . ." (footnote omitted)).

Taylor has failed to present any evidence which indicates that the defendants knew that the manner in which they treated Taylor created a substantial risk to Taylor's health and that, with this knowledge, they consciously disregarded such risk.  In other words, the undisputed evidence does not create a genuine dispute whether defendants chose to ignore a substantial risk of serious harm to Taylor.  *See id.* at 1349-50.  Under the circumstances of this case, the court concludes that the defendants' acts did not violate Taylor's constitutional rights.  Because Taylor cannot establish a constitutional violation, defendants are entitled to qualified immunity.  *See Hope*, 536 U.S. at 739 (officer's conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known").  Consequently, summary judgment is due to be granted in favor of the defendants on Taylor's Eighth Amendment claim.  *See Carter*, 352 F.3d at 1349-50.

28

### d. Conspiracy

Taylor alleges that the defendants conspired to violate his federal rights. "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. 24, 27 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir. 1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir. 1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990), *cert. denied,* 500 U.S. 932 (1991). . . . [T]he linchpin for conspiracy is agreement. . . ." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832 (1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants. . . . For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-84. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Defendants deny they conspired to violate Taylor's constitutional rights. The court

29

has carefully reviewed the pleadings filed by the plaintiff.  There is a total lack of evidence to support Taylor's suppositious theory that the defendants engaged in various conspiratorial acts against him.  Specifically, Taylor has failed to present any evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.  At best, Taylor's assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to sufficiently plead a conspiracy between the defendants.  *Harvey*, 949 F.2d 1133; *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Thus, Taylor has failed to produce any probative evidence of a conspiracy and the motion for summary judgment filed by the defendants is due to be granted regarding this claim.  *Bailey*, 956 F.2d at 1122.

### E. ADA Claim

Taylor maintains that the defendants violated his rights under the ADA.  Under Title II of the ADA, public entities may not discriminate against disabled persons.  *See* 42 U.S.C. § 12132, et seq.  Title II applies to inmates at state correctional facilities.  *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

Title II does not provide for individual liability.  *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (relying on *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001)).  Consequently, the defendants are due to be granted summary

30

judgment on Taylor's claim for money damages against them in their individual capacities.

Contrary to the defendants' argument that they also cannot be sued in their official capacities,

the Supreme Court has held that "insofar as Title II creates a private cause of action for

damages against the States for conduct that *actually* violates the Fourteenth Amendment,

Title II validly abrogates state sovereign immunity." *Georgia*, 546 U.S. at 159 (emphasis in

original); *see also Shepherd v. Corizon, Inc.*, No. CIV.A. 12-0290-WS-N, 2013 WL

1561513, at *1 (S.D. Ala. Apr. 12, 2013) (relying on *Georgia*, 546 U.S. at 159). The court

therefore considers whether Taylor has a viable ADA claim.

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1).

*Georgia*, 546 U.S. at 153-54.

To present a claim cognizable "under Title II of the ADA, a plaintiff must establish:

(1) that he is a qualified individual with a disability; (2) that he was excluded from the

participation in or denied the benefits of the services, programs, or activities of a public entity

or otherwise subjected to discrimination by such entity; (3) by reason of such disability."

*Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir. 2001).

> The remedy Congress chose [in enacting the ADA] is nevertheless a limited one.  Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility.  42 U.S.C. § 12131(2).  But Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs.  *It requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service.  Ibid.*  As Title II's implementing regulations make clear, the reasonable modification requirement can be satisfied in a number of ways. . . . [I]n the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services.  § 35.150(b)(1). Only if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes.  *Ibid.*  And in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service.  §§ 35.150(a)(2), (a)(3).

*Tennessee v. Lane*, 54 U.S. 509, 531-32 (2004) (emphasis added).

Assuming that Taylor is a qualified individual with a disability, he cannot show that defendants made any decisions to exclude him from participation in, or deny him the benefits of, programs, services, or activities because of his disability.  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1332, 1334 (11th Cir. 1999) (plaintiff must present evidence the disability constituted a determinative factor in the decision-making process); *McNely v. Ocala-Star*

*Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996). Instead, the only objective evidence before the court indicates that correctional officials were attempting to accommodate Taylor's disability but were caught in procedural delays unrelated to Taylor's disability or religious affiliation. The defendants installed wooden benches that satisfied Taylor's medical and religious needs. The record establishes Taylor was able to sit on the locker boxes on the Native American sacred grounds until the benches were installed in October 2010. In addition, the evidence indicates that defendants did not know Taylor was in significant pain during the pendency of his request. Taylor's disability was not a determinative factor in the decision-making process. *See Farley*, 197 F.3d at 1334. Consequently, Taylor was not excluded from participation in use of the Native American ceremonial grounds by reason of his disability. *See* 42 U.S.C. § 12132.

In light of the foregoing, Taylor's ADA claim provides no basis for relief against the defendants in their official capacities, and the defendants are therefore entitled to summary judgment. Because Taylor cannot show an ADA or constitutional violation, the court need not undertake analysis of whether Title II is a valid abrogation of sovereign immunity from money damages in the circumstances presented by Taylor's case. *See Georgia*, 546 U.S. at 159 (remanding for determination of what conduct violated Title II, whether that conduct also violated the Fourteenth Amendment, and "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid").

33

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED;

2.  Judgment be GRANTED in favor of the defendants;

3.  This case be DISMISSED with prejudice; and

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation **on or before September 13, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en

banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981).

     Done this 30th day of August, 2013.


                    /s/ Wallace Capel, Jr.
                    WALLACE CAPEL, JR.
                    UNITED STATES MAGISTRATE JUDGE